IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

RIENNE C.,[1]                                              No. 6:22-cv-01767-JR

                Plaintiff,                      OPINION & ORDER

    v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

                Defendant.

RUSSO, Magistrate Judge:

       Plaintiff Rienne C. brings this action for judicial review of the final decision of the

Commissioner of Social Security ("Commissioner") denying her application for Title XVI

Supplemental Security Income under the Social Security Act ("the Act"). All parties have

consented to allow a Magistrate Judge to enter final orders and judgement in this case in

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the nongovernmental party in this case.

accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). ECF No. 20. For the reasons set forth

below, the Commissioner's decision is affirmed, and this case is dismissed.

## PROCEDURAL BACKGROUND

Born in January 1997, plaintiff alleges disability beginning August 28, 2018. Tr. 16, 186-

90. Plaintiff alleged disability due to "anxiety disorder, Post Traumatic Stress Disorder (PTSD),

depression, sensory disassociation disorder, unknown disorder that causes sweating in hands and

luxating patellas." Tr. 202. Her application was denied initially and upon reconsideration. Tr. 91-

101, 107-25. On July 19, 2021, plaintiff appeared at an administrative hearing before

Administrative Law Judge ("ALJ") Mark Triplett. Tr. 29-62. On August 17, 2021, the ALJ

issued a decision finding plaintiff not disabled. Tr. 13-28. After the Appeals Council denied her

request for review, plaintiff filed a complaint in this Court. Tr. 2-8.

## THE ALJ'S FINDINGS

At step one of the five step sequential evaluation process, the ALJ found plaintiff had not

engaged in substantial gainful activity since September 21, 2018, the application date. Tr. 18. At

step two, the ALJ determined the following impairments were medically determinable and

severe: "anxiety, posttraumatic stress disorder ("PTSD"), and panic disorder with agoraphobia."

Tr. 18. At step three, the ALJ found plaintiff's impairments, either singly or in combination, did

not meet or equal the requirements of a listed impairment. Tr. 18.

Because plaintiff did not establish presumptive disability at step three, the ALJ continued

to evaluate how her impairments affected her ability to work. The ALJ resolved that plaintiff had

the residual function capacity ("RFC") to perform a full range of work at all exertional levels

except:

> she can perform simple, routine tasks. She can tolerate occasional contact with
> coworkers and supervisors, but no contact with the general public. She cannot

engage in team-based work activity, or in work that requires close collaboration with coworkers. She requires regular breaks at 2-hour intervals. She can tolerate no more than occasional changes to work routines and processes.

Tr. 20.

At step four, the ALJ determined the claimant has no past relevant work. Tr. 22. At step five, the ALJ found there were other jobs existing in significant numbers in the national economy that plaintiff could perform such as cleaner/housekeeper, hospital cleaner, and window cleaner. Tr. 23. The ALJ therefore found plaintiff not disabled from September 21, 2018, through the date of decision. Tr. 24.

## DISCUSSION

Plaintiff argues the ALJ committed two harmful errors. She contends the ALJ erred by (1) discounting her testimony without a clear and convincing reason for doing so, and (2) improperly evaluating Mike Myers, Ph.D.'s medical opinion. For the reasons that follow, the Court finds the ALJ did not err, and affirms.

## I.    Symptom Testimony

Plaintiff contends the ALJ erred by discrediting her testimony about the extent of her anxiety symptoms, agoraphobia, and sensory issues. Pl.'s Br., ECF No. 12 at 9-14. When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of ... symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (internal citation omitted). A general assertion the claimant is not credible is insufficient; the ALJ must "state which ... testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the

ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). In other words, the "clear and convincing" standard requires an ALJ to "show [their] work." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

Thus, in formulating the RFC, the ALJ is not tasked with "examining an individual's character" or propensity for truthfulness, and instead assesses whether the claimant's subjective symptom statements are consistent with the record as a whole. SSR 16-3p, *available at* 2017 WL 5180304. If the ALJ's finding regarding the claimant's subjective symptom testimony is "supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (internal citation omitted). The question is not whether the ALJ's rationale convinces the court, but whether the ALJ's rationale "is clear enough that it has the power to convince." *Smartt*, 53 F.4th at 499.

Plaintiff testified at the hearing that she lives with her mother and brothers on six acres. Tr. 36, 39. Her family helps comfort her when she needs it. Tr. 36. She attempted to work at a couple of jobs, but one lasted only a couple of hours and the other lasted only a couple of days. Tr. 38. She typically isolates at home. Tr. 39, 42. She has a hard time going into large stores; she feels unsafe and vulnerable in large areas. Tr. 40. She experiences sensory overload in places with a lot of noise and talking. Tr. 40. She has a fear of toilets. Tr. 40-41. She experiences terrible nightmares about being trapped in bathrooms. Tr. 40. She stated that she is comfortable going to medical appointments because it is where she "ought to be if [something] happens." Tr. 41. She needs someone to accompany her outside the home. Tr. 41-42. She experiences panic attacks, during which she feels "a horrible urge to get out" and to "run away from things." Tr. 42-43. She experiences daily anxiety symptoms. Tr. 44. She typically spends her days sitting on the couch and watching television with a weighted blanket. Tr. 44-45. She has stopped doing a

lot of hobbies because of anxiety. Tr. 45. She does not interact with anyone on a consistent basis other than her boyfriend, brothers, and mother. Tr. 45. She struggles to leave her house or her comfort zone. Tr. 60.

In written testimony, plaintiff reiterated many of these allegations. She reported waxing and waning anxiety symptoms, agoraphobia, and sensory issues. Tr. 235. She reported very minimal daily activities; she spends most of her time lying on the couch. Tr. 236, 268. She requires a sleep aid due to nightmares. Tr. 236. She reported minimal maintenance of personal hygiene; she "can go a month without bathing." Tr. 237, 268. She needs reminders to brush her teeth and bathe. Tr. 269. She has a fear of toilets/plumbing. Tr. 237. She described a fluctuating capacity to perform household chores and "tak[e] care of [her]self." Tr. 238, 267, 269. Her mom is her "safety person." Tr. 238. She does not engage in social activities. Tr. 240, 272. When she does go out, her mother typically accompanies her. Tr. 238, 239, 270. She has "too many" unusual behaviors or fears to explain. Tr. 241. She experiences somatic symptoms secondary to anxiety. Tr. 275-77.

The ALJ found plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms and did not identify evidence of malingering. Tr. 21. However, the ALJ concluded that plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. Tr. 21. Specifically, the ALJ found plaintiff's symptom allegations were inconsistent with objective medical evidence, plaintiff's treatment history, and that plaintiff's daily activities conflicted with her symptom allegations. Tr. 21.

The ALJ reasonably discounted aspects of plaintiff's allegations of disabling mental health symptoms as inconsistent with the record. Conflict with objective medical evidence is a

sufficient basis for discounting a claimant's testimony. *Smartt*, 53 F.4th at 498; 20 C.F.R. §
416.929(c)(2). At the hearing, plaintiff testified about daily anxiety, and a fear of interaction and
leaving the home. *See, e.g.*, Tr. 39-45. The ALJ acknowledged plaintiff's symptoms and included
several limitations in the RFC that accommodated for these mental health issues. For example,
he limited plaintiff to only occasional contact with coworkers and supervisors, no teams-based
work activity or work requiring close collaboration with coworkers, and no contact with the
general public. Tr. 20. The ALJ further concluded that plaintiff's alleged limitations below this
level conflicted with objective medical evidence. In contrast to plaintiff's allegations that her
mental health symptoms were fully disabling, the ALJ noted that plaintiff was cooperative,
engaged, "generally healthy appearing," had normal speech and a logical thought process, and/or
had unimpaired concentration, memory, and judgment. Tr. 21, 407, 411, 500. Despite seeming
nervous at an appointment, plaintiff was fully oriented without any apparent thought disorder. Tr.
21, 411. Plaintiff had grossly normal memory and normal intellectual functioning. Tr. 19, 407,
500. These records all conflicted with plaintiff's allegations of more significant limitations and
amount to substantial evidence supporting the ALJ's decision to discount plaintiff's testimony
about the severity of her mental health symptoms.

The medical records the ALJ cited also show plaintiff's mental health issues improved
with treatment, which was another clear and convincing reason to discount her symptom
testimony. If the record shows a claimant's symptoms have improved with treatment, that
improvement is "an important indicator of the intensity and persistence of ... symptoms." 20
C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). For one, the ALJ noted that just before her alleged
disability date plaintiff reported that she was "doing well" and that she was "happy most of the
time." Tr. 21, 366. And, just after filing her disability application, plaintiff described her anxiety

as improving but she still had some difficulty interacting with others. Tr. 21, 373. Plaintiff even testified that her panic attacks could be mitigated by prescribed medication, that they would last only "until I get a medicine." Tr. 19, 43. This was all substantial evidence supporting the ALJ's conclusion that plaintiff's mental health symptoms improved with treatment, and his decision to discount her symptom allegations as a result.

The ALJ also discounted plaintiff's subjective symptom testimony because it was inconsistent with her own statements about daily activities. Tr. 22. Activities of daily living can form the basis for an ALJ to discount a claimant's testimony in two ways: (1) as evidence a claimant can work if the activities "meet the threshold for transferable work skills," or (2) where the activities "contradict [a claimant's] testimony." *Orn v. Astrue,* 495 F.3d 625, 639 (9th Cir. 2007). The relevant regulations require an ALJ to consider a claimant's daily activities when evaluating subjective symptom statements. 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i). The Ninth Circuit has even found such routine activities as playing video games, using public transportation, and preparing meals to undercut a claimant's testimony of disabling limitations. *Ahearn v. Saul*, 988 F.3d 1111, 1117 (9th Cir. 2021). A claimant need not be utterly incapacitated to receive disability benefits, however, and sporadic completion of minimal activities is insufficient to support a negative credibility finding. *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *see Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (requiring the level of activity to be inconsistent with the claimant's alleged limitations to be relevant to her or her credibility).

The ALJ reasonably found several of plaintiff's reported daily activities conflicted with her allegations about mental health symptoms. To discount a plaintiff's testimony, and ALJ must cite daily activities that "meet the threshold for transferable work skills" or "contradict [a

claimant's] testimony." *Orn,* 495 F.3d at 639. The ALJ reasonably identified evidence that plaintiff could do more than she alleged at the hearing when deciding to partially discount her symptom testimony. For example, the ALJ noted that plaintiff had been able to engage in and succeed at taking an online course to qualify for an esthetician license and passed all necessary testing to obtain her driver's license. Tr. 22, 36, 47-48, 470. Plaintiff reported that she enjoyed writing music, computers, art, and displaying art projects on her Instagram account. Tr. 22, 496. While plaintiff asserted that she struggled to function outside her home, Tr. 39, the ALJ considered that plaintiff reported she could go out with her family, spent a week at her boyfriend's home, and attended a concert in a large city over an hour's drive from her home. Tr. 22, 450, 459, 478. Although plaintiff highlights other aspects of the record suggesting her daily activities were limited (ECF No. 12 at 10-11), the ALJ reasonably concluded that "her demonstrated ability to engage in such activity contradicts her assertion that she struggles to function outside her home." Tr. 22. Because the ALJ reasonably cited several activities that conflict with plaintiff's allegations about the limitations her mental health symptoms cause, this was another clear and convincing reason for the ALJ to rely upon to discount her testimony.

Plaintiff urges the Court to adopt a different interpretation of the medical record but does not undermine the substantial evidence supporting the ALJ's decision. Specifically, plaintiff argues the ALJ's analysis fails to account for the waxing and waning nature of mental illness that impacts her ability to function independently in public spaces. Pl. Reply at 2. Plaintiff argues that the ALJ "selectively cited evidence," but does not point to specific medical evidence the ALJ failed to address. Pl. Reply at 2. As noted above the ALJ's citations to the medical record were sufficiently specific to "show [his] work," and the citations directly contradicted aspects of plaintiff's testimony. *Smartt,* 53 F.4th 499. And contrary to plaintiff's claim that the ALJ focused

on temporary improvement, the ALJ acknowledged the longitudinal record including plaintiff's reported symptoms. For instance, the ALJ considered that plaintiff was visibly anxious in crowded or unfamiliar settings, but multiple treatment providers described her as cooperative, open, and engaged within a clinical setting. Tr. 22. The ALJ accommodated these findings by limiting plaintiff to only occasional contact with coworkers and supervisors but no team-based activity or work that required close collaboration with coworkers but no contact with the general public. Tr. 20. Next, the ALJ accounted for plaintiff's struggles with stress, changes in routine, and her allegations that her symptoms affected her concentration and pace, Tr. 19, 272-73, by limiting her to simple and routine tasks, no more than occasional changes to work routines and process, and regular breaks every two hours. Tr. 20. Thus, contrary to plaintiff's claim, the ALJ did not cherry pick the record. *See Wesselius v. Kijakazi*, 2021 WL 4948928 at *1 (9th Cir. 2021) (While "[i]t is error for an ALJ to pick out a few isolated instances of improvement," the ALJ's findings were supported by a "broad set of mental status exams covering the entire relevant time period.") (internal citations and quotations omitted). Considering the whole medical record, the ALJ accounted for plaintiff's mental impairments while also identifying substantial evidence to discount plaintiff's allegations of debilitating symptoms and limitations.

Ultimately, plaintiff's arguments are an effort to have this Court re-weigh the evidence, which is beyond the scope of review. *Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021) ("We may not reweigh the evidence or substitute our judgment for that of the ALJ."). Even when there are two reasonable interpretations—plaintiff's and the ALJ's—the ALJ's interpretation must prevail. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the [Commissioner's] conclusion that must be upheld."). Against that backdrop, even though plaintiff clearly interprets the evidence differently,

she has not (and cannot) establish error by simply advancing a different interpretation of the medical evidence. The ALJ adequately considered the evidence that supported plaintiff's allegations, identified medical evidence that conflicted with plaintiff's testimony about the extent and frequency of her mental health limitations, and reasonably discounted those allegations in the written opinion. *See* Tr. 22.

## II.    Medical Opinion Evidence

Plaintiff also argues that the ALJ did not properly consider the medical opinion of Dr. Michael Myers, Ph.D. Pl. Br, ECF No. 12 at 5-9. For claims filed on or after March 27, 2017, ALJs are no longer required to give deference to any medical opinion, including treating source opinions. 20 C.F.R. § 404.1520c. Instead, the agency considers several factors. 20 C.F.R. § 404.1520c(a). These are: supportability, consistency, relationship to the claimant, specialization, and "other factors." 20 C.F.R. § 404.1520c(c)(1)-(5). The "most important" factors in the evaluation process are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2).

Under this framework, the ALJ must "articulate ... how persuasive [they] find all of the medical opinions" from each doctor or other source. 20 C.F.R. § 404.1520c(b)(2). In doing so, the ALJ is required to explain how supportability and consistency were considered and may explain how the other factors were considered. 20 C.F.R § 404.1520c(b)(2). When two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported ... and consistent with the record ... but are not exactly the same," the ALJ is required to explain how the other factors were considered. 20 C.F.R. § 404.1520c(b)(3). "Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

In June 2021, Dr. Myers reported in a written statement that he had been treating plaintiff since May 2019 in weekly psychotherapy sessions. Tr. 701. Plaintiff's diagnoses included agoraphobia with panic disorder, PTSD, and rule-out autism spectrum disorder. Tr. 701. Dr. Myers noted that plaintiff met the criteria for specific (isolated) phobias and chronic PTSD with some features of Asperger's syndrome. Tr. 702. He opined that although plaintiff could meet some of the requirements of working with the public, coworkers, and supervisors, she could not maintain consistency because of her panic disorder. Tr. 702. He also opined that plaintiff might be able to meet some of the requirements of full-time work, however, her attendance would be unpredictable due to panic attacks and PTSD triggering. Tr. 702.

Dr. Myers assessed no limitation in plaintiff's ability to understand, remember, and carry out simple instructions. Tr. 704. He did not know about her ability to make judgments on simple work-related decisions, understand and remember complex instructions, carry out complex instructions, or make judgments on complex work-related decisions. Tr. 704. He wrote, "I have no data to base this judgment upon. She has no previous work experience." Tr. 704. He assessed that plaintiff's ability to interact appropriately with supervisors, coworkers, and the public and to respond to changes in the routine work setting was "potentially" affected by her impairments. Tr. 704. He assessed mild to moderate limitation in her ability to interact appropriately with the public. Tr. 704. He assessed moderate limitation in her ability to interact appropriately with supervisors and coworkers. Tr. 704. He assessed marked limitation in her ability to respond appropriately to usual work situations and changes in a routine work setting. Tr. 704. He explained, "[a]nxiety & panic attacks are random, manageable one day, not the next." Tr. 705. He opined that the limitations assessed had been present since childhood. Tr. 705. He concluded

that plaintiff could "probably" manage benefits in her own best interest. Tr. 706. He opined that

she would be off task at least 15% of the workday due to anxiety and panic attacks.

The ALJ adequately discussed the strength of the evidence underlying Dr. Myers'

opinion in the record when finding it "not fully persuasive." Tr. 22. The supportability factor

requires ALJs to consider the persuasiveness of a medical opinion based on how "relevant the

objective medical evidence and supporting explanations presented by a medical source are to

support her or her medical opinion." 20 C.F.R. § 404.1520c(c)(1). The ALJ discounted Dr.

Myers' opinion because it was equivocal and lacked sufficient supporting objective medical

evidence to be fully persuasive. The ALJ first emphasized that Dr. Myers performed only one

mental status examination in May 2019, which found plaintiff "nervous," but fully oriented, with

no apparent thought disorder, and her concentration, memory, and judgment were not impaired.

Tr. 21, 411. The ALJ further noted that Dr. Myers' other opinions were based largely on

plaintiff's self-reports, which the ALJ properly found overstated her limitations. *See Tommasetti,*

533 F.3d at 1041 ("An ALJ may reject a [ ] physician's opinion if it is based to a large extent on a

claimant's self-reports that have been properly discounted[.]"). Finally, the ALJ discounted Dr.

Myers' opinion because it was equivocal. Tr. 22. For example, Dr, Myers predicted that plaintiff

would "probably" miss work more than four days per month and indicated that he lacked data to

make a judgment on plaintiff's ability to carry out more complex tasks. Tr. 22, 701-07. In all, the

ALJ reasonably found Dr. Meyer's medical opinion was poorly supported by explanation and

objective medical evidence.

The ALJ also adequately considered the inconsistency of Dr. Myers' limitations with the

overall medical record. The consistency factor requires the ALJ to assess medical opinions'

alignment with "evidence from other medical sources and nonmedical sources in the claim." 20

C.F.R. § 404.1520c(c)(2). The ALJ reasonably found several aspects of Dr. Myers' opinion inconsistent with the record, and therefore unpersuasive. Tr. 22. For example, the ALJ explained that Dr. Myers' opinion was inconsistent with plaintiff's ability to perform activities of daily living like attending a concert in a large city over an hour's drive from home, getting her driver's license, going out with her family, and spending a week at her boyfriend's home . Tr. 22, 450, 459, 478. Finally, the ALJ noted that Dr. Myers' opinions were inconsistent with other persuasive medical opinions in the record. For example, the ALJ considered the opinions of State agency consultants J. McWilliams, Ph.D., and Ben Kessler, Psy.D., who found her far less limited that Dr. Myers. Tr. 64-75, 77-90. Plaintiff did not challenge the ALJ's evaluation of these medical opinions and therefore forfeited any challenges to their persuasiveness. *See Carmickle*, 533 F.3d at 1161 n.2 (citation omitted). In sum, the ALJ adequately considered these objective findings, and reasonably concluded they were inconsistent with several of the limitations in Dr. Myers' opinion.

## CONCLUSION

For the reasons given above, the Commissioner's decision is affirmed, and this case is dismissed.

IT IS SO ORDERED.

DATED this 18th day of November, 2024.


 /s/ Jolie A. Russo
Jolie A. Russo
United States Magistrate Judge